# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **LIFEVANTAGE CORPORATION,** Plaintiff, v. **JASON DOMINGO et al.,** Defendants. | **MEMORANDUM DECISION AND ORDER** Case No. 2:13-CV-01037-DB-PMW **District Judge Dee Benson** **Magistrate Judge Paul M. Warner** |

Before the court is Plaintiff and Counter-Defendant LifeVantage Corporation's ("Plaintiff") motion to quash Defendants and Counter-Claimants Jason Domingo and Ovation Marketing Inc.'s ("Defendants") subpoena to third party Russell Communications, Inc. ("Russell").[1]

Plaintiff is a "publicly trade international science-based nutraceutical company."[2] Mr. Domingo was previously Plaintiff's lead distributor and conducted business through Ovation.[3] Plaintiff, believing that Defendants were disparaging Plaintiff and working to set up a competing company, terminated Defendants and brought an action against them for breach of contract, misappropriation of trade secrets, and injunctive relief. Thereafter, Defendants filed a

---

[1] Docket no. 49.

[2] Docket no. 1.

[3] Docket no. 1 at 2.

counterclaim and third-party complaint. Defendants sued Plaintiff for defamation, tortious interference with economic relations, breach of contract, and civil conspiracy.[4] Defendants allege that shortly after the termination, Plaintiff began making defamatory and disparaging statements on its website and in calls with other distributors.[5] Defendants also allege that Plaintiff published and re-published these statements to the media and others in the multi-level marketing industry.[6]

Defendants issued a subpoena *duces tecum* to obtain records of Russell, Plaintiff's public relations firm.[7] Plaintiff brought a motion to quash the subpoena, asserting that 69 pages of responsive documents spanning an approximately two-week period were work product.[8] Plaintiff also asserted that four of the documents were attorney-client privileged communications.

Plaintiff asserts that "[a]nticipating a counterclaim, LifeVantage prospectively retained Russell to *monitor the mediasphere* in the aftermath of the termination and lawsuit."[9] Plaintiff also states that "Russell was retained by LifeVantage's counsel specifically in anticipation of the litigation LifeVantage filed against Mr. Domingo to provide expert guidance and counsel and to

---

[4] Docket no. 11.

[5] Docket no 73.

[6] *See* docket no. 73.

[7] Docket no. 80-1 at 5.

[8] Docket no. 49.

[9] Docket no. 49 at 8 (emphasis added).

*monitor* the fallout from the very significant decision to terminate and sue its lead distributor."[10] However, Russell worked as Plaintiff's public relations firm at least as early as February 2013, nine months before the underlying action was filed.[11]  The descriptions contained in Plaintiff's privilege log are generally inadequate to establish the assertion of privilege.  The earliest entries on Plaintiff's privilege log are from November 2013, and do not appear to involve Plaintiff's in-house or outside counsel.[12]  Example emails of communications between Plaintiff and Russell show Russell acted in a traditional public relations capacity unrelated to litigation right up to the time of the filing of the lawsuit.[13]

Under rule 26(b) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*  A party may request the production of documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1).  "The district court has broad discretion over the control of discovery, and [the Tenth Circuit] will not set aside discovery rulings absent an abuse of that discretion." *Sec. & Exch. Comm'n v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) (quotations and citations omitted).

---

[10] Docket no. 49 at 3 (emphasis added).

[11] Docket no. 80-1 at 2.

[12] Docket no. 80-2 at 2.

[13] Docket no. 80-2.

"The attorney-client privilege protects 'confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor.'" *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)). To be protected under the attorney-client privilege, "[t]he communication itself must be primarily or predominantly of a legal character. . . . If the advice sought is that of a non-legal professional rather than a lawyer, no privilege exists." *McNamee v. Clemens*, No. 09 CV 1647, 2013 WL 6572899, *5 (E.D.N.Y., Sept. 18, 2013). "[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege; rather, the communication between a lawyer and client must relate to legal advice or strategy sought by the client." *In re Grand Jury Proceedings*, 616 F.3d at 1182 (internal quotation marks omitted) (emphasis added).

Courts have widely rejected claims of attorney-client privilege or work-product protection over communications with public relations firms. "A party may not cloak a document with a privilege by simply having business . . . or public relations matters handled by attorneys." *Burton v. R.J. Reynolds Tobacco Co.*, 200 F.R.D. 661, 669 (D. Kan. 2001). "Most courts agree . . . that basic public relations advice from a consultant hired by the corporate client is not within the privilege." *In re New York Renu with Moistureloc Product Liability Litigation*, No. MDL 1785, CA 2:06-MN-77777-DCN, 2008 WL 2338552 at *7 (D.S.C. May 8, 2008); *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 54-56 (S.D.N.Y. 2000) (holding that the attorney-client privilege and work-product doctrine did not protect the majority of a public relations firm's documents); *McNamee*, 2013 WL 6572899 at *6-8 (holding that the attorney-client privilege and work-product protection do not apply to most documents from and

4

communications with a public relations firm); *Burton*, 200 F.R.D. at 667 (holding that the majority of documents produced by public relations firm were not protected by the attorney-client privilege or work-product immunity doctrine because the communications were not related to seeking or giving legal advice but were instead related to public relations and public image issues); *In re New York Renu*, 2008 WL 2338552 at * 11 (holding that the majority of a public relations firm's documents were not protected by the attorney-client privilege, reasoning that "there is no indication that [the public relations firm] is providing anything other than ordinary public relations advice" and holding that the party "has not satisfied its burden of showing that [the public relations firm] is necessary to the legal representation.")

"[A]s a general matter[,] public relations advice, even if it bears on anticipated litigation, falls outside the ambit of protection of the so-called 'work product' doctrine." *McNamee*, 2013 WL 6572899 at *3 (quoting *Calvin Klein*, 198 F.R.D. at 55). "This is because the purpose of the rule is to provide a zone of privacy for strategizing about the conduct of litigation itself, not the strategizing about the effects of litigation on the client's customers, the media, or the public generally." *Calvin Klein*, 198 F.R.D. at 55. "A media campaign is not a litigation strategy. Some attorneys may feel it is desirable at times to conduct a media campaign, but that decision does not transform their coordination of a campaign into legal advice." *In re New York Renu*, 2008 WL 2338552 at * 8.

Here, the court finds the documents sought by Defendants' subpoena appear relevant to claims and defenses in the case, particularly Defendants' defamation claim, and are not privileged or work product protected. Plaintiff complains that Defendants' defamation allegations are insufficiently specific, while simultaneously preventing Defendants from

5

conducting discovery related to those allegations. The documents sought from Russell appear likely to be admissible at trial or "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Further, the limited information contained in Plaintiff's privilege log fails to establish a basis for asserting privilege or work product protection for Russell's public relations work.

Accordingly, Plaintiff's motion to quash is **DENIED**.

**IT IS SO ORDERED**.

DATED this 29th day of September, 2015.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge